[pGAIDRY, J.
This appeal concerns the classification of property acquired during the existence of the community of acquets and gains between the parties. Plaintiff, Elwood Hano, appeals a trial court judgment finding that a parcel of land acquired during his marriage to defendant, Mary Latino Hano, was the separate property of Mary Latino Hano. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Elwood Hano and Mary Latino Hano were married in September of 1972, and since the parties did not enter into a separate property regime, a community of ac-quets and gains was created. In February of 1973, Joseph Latino and Mary Ann Ca-taldo Latino, Mary Latino Hano’s parents, transferred by act of cash sale a one-acre parcel of property on Wardline Road in Tangipahoa Parish to Mary Latino Hano. The act recited a cash consideration of two thousand dollars, “cash in hand paid, the receipt of which is hereby acknowledged.” The act of cash sale reflected that the property was conveyed to:
MARY LATINO HANO, married but once and then to Elwood Hano with whom she is living and residing, a resident of legal age of the Parish of Livingston, State of Louisiana.
The act of cash sale did not contain a “dual declaration” indicating that Mary Latino Hano was purchasing the property as her separate property.[1]
Elwood Hano and Mary Latino Hano were divorced by a judgment dated March 27, 1997, and the community of acquets and gains was terminated retroactive to December 29, 1995, the date the petition for divorce was filed. Subsequently, El *63 wood Hano filed a Petition for Judicial 13Partition of Community Property, and the Wardline Property acquired from Joseph Latino and Mary Ann Cataldo Latino was listed in the detailed descriptive list and marked for traversal. A hearing was held on June 26, 2000 on the issue of the classification of the Wardline Property as community or separate. Mary Latino Hano argued that the act of cash sale by which she acquired the Wardline Property was in fact a “disguised donation” and that her parents had wanted her to have the property as her separate property. Elwood Hano claimed that the transaction was a cash sale and that the property belonged to the community.
At the hearing, Mary Latino Hano testified that the two thousand dollars recited in the act as consideration for the conveyance was actually never paid. She did not pay the money, and if Elwood Hano had paid it, she claimed that she would have known about it. Furthermore, Elwood Hano was not present at the time she acquired the land, nor did he sign the Act of Cash Sale. It was her understanding that the donation was in the form of a cash sale to preserve title to the property.
Elwood Hano testified that he paid Joseph Latino with twenty $100 bills for the property, and that he would never have accepted a donation from his former father-in-law or anyone else. However, he had no receipt or any other proof that the money had been paid. When questioned as to why his name was not listed as a vendee on the conveyance if he had paid cash for the property, Elwood Hano testified that he and Mary Latino Hano had been married for less than a year at the time of the conveyance, and his former father-in-law was attempting to protect Mary Latino Hano in the event the marriage did not work out. Elwood Hano pointed out that a building had been erected on the property, and it had been mortgaged numerous times over the years in acts signed by both him and by Mary | ¿Latino Hano. He testified that he never would have gone into debt to finance improvements on property he did not own.
Johnny Latino, Mary Latino Hano’s brother, testified at the hearing that his parents owned a five-acre tract of land from which they wanted to give each of their children property. Around the same time as the conveyance to Mary Latino Hano, Joseph Latino and Mary Ann Catal-do Latino conveyed to Johnny Latino a one-acre tract of land from the same tract as the parcel conveyed to Mary Latino Hano. The conveyance to Johnny Latino was also called a cash sale, naming only Johnny Latino as vendee, although Johnny Latino was married at the time of the conveyance. Mr. Latino testified that the transaction was, in reality, a donation, and he was informed by the attorney who handled both the conveyance to him and to Mary Latino Hano that the act was called a cash sale in order to avoid title problems with the property. Johnny Latino knew that his parents intended these conveyances as donations and would not have accepted money from their children.
Salvador Latino, another brother of Mary Latino Hano, testified that prior to the conveyances to Johnny Latino and Mary Latino Hano, he received a similar parcel of property from the Wardline Road tract from his parents. His transaction was also in the form of a cash sale, although no money changed hands in connection with the transfer, but was actually a donation to him alone from his parents. Salvador Latino testified that his act of sale listed his wife as a co-vendee because they were mortgaging the property to build a house on it, and the mortgage company required that both spouses participate in the mortgage.
*64 After taking the matter under advisement, the trial court ruled that the Ward-line Property was the separate property of Mary Latino Hano, finding . | Kthat the transaction was in reality a donation of the immovable property to Mary Latino Hano from her parents. This appeal followed the rendition of the Judgment of Partition of Community Property, which incorporated the trial court’s earlier ruling on the classification of the Wardline Property.
DISCUSSION
The law is clear that things in the possession of a spouse during the existence of a community of acquets and gains are presumed to be community property and the party asserting otherwise has the burden of overcoming this presumption by clear and convincing evidence. La. C.C. art. 2340; Dawson v. Dawson, 610 So.2d 917, 919 (La.App. 1 Cir.1992). Although La. C.C. art. 2340 was not enacted until several years after the conveyance at issue herein, the rebuttable presumption established by the article is evidentiary in nature, and thus procedural; therefore it is to be given retroactive application. Tullier v. Tullier, 464 So.2d 278, 281 (La.1985).
The findings of a trial court regarding the classification of property as community or separate is a factual determination which will not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact; only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
We believe that the evidence introduced at trial was sufficient for a rational trier of fact to conclude that the presumption of community established in La. C.C. art. 2340 had been rebutted. It is clear that the trial | (¡court believed the testimony of Mary Latino Hano, Johnny Hano, and Salvador Hano concerning the circumstances of the conveyance from their parents and disbelieved Elwood Hano’s testimony that he paid Joseph Latino two thousand dollars in cash for the property. We find no manifest error in the trial court’s findings. The judgment of the trial court is affirmed. Costs of this appeal are to be borne by Elwood Hano.
AFFIRMED.

. At the time of the conveyance at issue, when a spouse acquired real property without a dual declaration in the deed that he purchased the property with his separate funds and that he intended it to become part of his separate estate, the property so purchased was conclusively presumed to belong to the community.